EXHIBIT "A" PART I



## IN THE SUPERIOR COURT OF GWINNETT COUNTY
### STATE OF GEORGIA

APOLLOMD PHYSICIAN SERVICES GA, LLC,
APOLLO BUSINESS SERVICES, LLC,
TRI-COUNTY ANESTHESIA, LLC AND
INDEPENDENT PHYSICIANS RESOURCE, INC.

CIVIL ACTION
NUMBER **11A 10925 10**

PLAINTIFFS

VS.

TRAVELERS INDEMNITY COMPANY OF
AMERICA AND TRAVELERS PROPERTY
CASUALTY COMPANY OF AMERICA,
ATTN: Registered Agent
Corporation Service Co., 40 Technology
Parkway South, #300
Norcross, GA  30092                    DEFENDANTS

SUMMONS

TO THE ABOVE NAMED DEFENDANT:

You are hereby summoned and required to file with the Clerk of Said Court and serve upon the Plaintiff's attorney, whose name and address is:

> Assunta S. Fiorini, Esq.
> DENNIS, CORRY, PORTER & SMITH, LLP
> 3535 Piedmont Road, Building 14
> Suite 900
> Atlanta, GA  30305

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This  14  day of October , 2011 .

Tom Lawler
Clerk of Superior Court

By: _____
Deputy Clerk

Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.

COC SC-1 Revised 12-99

# General Civil Case Filing Information Form (Non-Domestic)

**Court**
☑ Superior
☐ State

County __GWINNETT__

Docket # _11 A 10925 10_

Date Filed _____
MM-DD-YYYY

FILED IN OFFICE
CLERK SUPERIOR COURT
GWINNETT COUNTY GA.
2011 OCT 14  PM 2:49
TOM LAWLER, CLERK

**Plaintiff(s)**

APOLLOMD PHYSICIAN SERVICES GA, LLC
Last   First   Middle I. Suffix Prefix   Maiden

APOLLO BUSINESS SERVICES, LLC
Last   First   Middle I. Suffix Prefix   Maiden

TRI--COUNTY ANESTHESIA, LLC, AND
Last   First   Middle I. Suffix Prefix   Maiden

INDEPENDENT PHYSICIANS RESOURCE, INC.,
Last   First   Middle I. Suffix Prefix   Maiden

No. of Plaintiffs __4__

**Defendant(s)**

TRAVELERS INDEMNITY COMPANY OF AMERICA
Last   First   Middle I. Suffix Prefix   Maiden

TRAVELERS PROPERTY CASUALTY COMPANY OF
Last   First   Middle I. Suffix Prefix   Maiden  AMERICA

Last   First   Middle I. Suffix Prefix   Maiden

Last   First   Middle I. Suffix Prefix   Maiden

No. of Defendants __2__

**Plaintiff/Petitioner's Attorney**     ☐ Pro Se

FIORINI,     ASSUNTA     S.
Last          First          Middle I.   Suffix

Bar # __215851__

| Check Primary Type (Check only ONE) |
|---|
| ☒ Contract/Account |
| ☐ Wills/Estate |
| ☐ Real Property |
| ☐ Dispossessory/Distress |
| ☐ Personal Property |
| ☐ Equity |
| ☐ Habeas Corpus |
| ☐ Appeals, Reviews |
| ☐ Post Judgment Garnishment, Attachment, or Other Relief |
| ☐ Non-Domestic Contempt |
| ☐ Tort (If tort, fill in right column) |
| ☐ Other General Civil Specify _____ |

| If Tort is Case Type: (Check no more than TWO) |
|---|
| ☐ Auto Accident |
| ☐ Premises Liability |
| ☐ Medical Malpractice |
| ☐ Other Professional Negligence |
| ☐ Product Liability |
| ☐ Other Specify _____ |
| Are Punitive Damages Pleaded?  ☐ Yes  ☐ No |

IN THE SUPERIOR COURT OF GWINNETT COUNTY
STATE OF GEORGIA

APOLLOMD PHYSICIAN SERVICES GA,
LLC, APOLLO BUSINESS SERVICES, LLC,
TRI-COUNTY ANESTHESIA, LLC, and
INDEPENDENT PHYSICIANS RESOURCE,
INC.,

     Plaintiffs,

v.

TRAVELERS INDEMNITY COMPANY OF
AMERICA and TRAVELERS PROPERTY
CASUALTY COMPANY OF AMERICA,

     Defendants.

CIVIL ACTION
FILE NO.: _____

**11 A 10925 10**

**JURY TRIAL DEMANDED**

## COMPLAINT

COME NOW, Plaintiffs, ApolloMD Physician Services GA, LLC, Apollo Business Services, LLC, Tri-County Anesthesia, LLC, and Independent Physicians Resource, Inc., (hereinafter jointly referred to as "Apollo") and bring this action for breach of contract and bad faith, pursuant to O.C.G.A. § 33-4-6, showing this Honorable Court the following:

## PARTIES

1.

Plaintiff, ApolloMD Physician Services GA, LLC (hereinafter "ApolloMD Physician"), is a Georgia corporation licensed to do business in the State of Georgia.

2.

Plaintiff, Apollo Business Services, LLC (hereinafter "Apollo Business"), is a Georgia corporation licensed to do business in the State of Georgia.

3.

Plaintiff, Tri-County Anesthesia, LLC (hereinafter "Tri-County"), is a Georgia corporation licensed to do business in the State of Georgia.

4.

Plaintiff, Independent Physicians Resource, Inc. (hereinafter "IPR"), is a Georgia corporation licensed to do business in the State of Georgia.

5.

Defendant Travelers Indemnity Company of America is a foreign insurance company licensed to do business in the State of Georgia and may be served via its Registered Agent, Corporation Service Company, 40 Technology Parkway South, #300, Norcross, Georgia 30092, and is subject to the jurisdiction of this Court.

6.

Defendant Travelers Property Casualty Company of America is a foreign insurance company licensed to do business in the State of Georgia and may be served via its Registered Agent, Corporation Service Company, 40 Technology Parkway South, #300, Norcross, Georgia 30092, and is subject to the jurisdiction of this Court.

**JURISDICTION AND VENUE**

7.

Jurisdiction over this matter is vested in this Court pursuant to Article 6, Section 4, Paragraph 1 of the Constitution of the State of Georgia.

8.

Venue is proper with this Court as to the Defendants pursuant to Article 6, Section 2, Paragraph 6 of the Constitution of the State of Georgia and O.C.G.A. § 33-4-1.

## ANESTHESIA SERVICES AGREEMENT

9.

Tri-County employs or contracts with physicians who are licensed to practice medicine in the State of Georgia and who are primarily engaged in the practice of anesthesia medicine.

10.

ApolloMD Physician owns a majority of the issued and outstanding membership interests of Tri-County.  Apollo MD Physician controls and manages the affairs of Tri-County.

11.

WellStar Health System, Inc. (hereinafter "WellStar"), through a series of affiliated companies, manages and operates Cobb Hospital, Inc. (hereinafter "Cobb Hospital").

12.

On May 22, 2007, Tri-County entered into a Professional Services Agreement Anesthesia Services (hereinafter "Anesthesia Services Agreement") with WellStar and Cobb Hospital to provide anesthesia medical services to Cobb Hospital, as managed and operated by WellStar.

13.

The Anesthesia Services Agreement contains the following indemnification clause:

> B.  Indemnification.  Contractor agrees to indemnify and hold Health System and its subsidiaries including, but not limited to, each Hospital and their respective officers, trustees, employees and agents harmless from any and all claims, actions, liabilities, losses, damages for personal injury or property damages, and expenses (including attorneys' fees of counsel chosen by Health System, and costs of defense regardless of outcome), which are brought against or may be brought against Health System or a Hospital: (i) which arise or may arise as a result of any conduct, acts or omissions of Contractor, any Physician or Paraprofessional or any other person providing services pursuant to or in breach of this Agreement; or (ii) for any criminal conduct or intentional wrongdoing by Contractor, any Physician or Paraprofessional or any other person providing services pursuant to this Agreement, or (iii) the breach of this Agreement by Contractor or any Physician or Paraprofessional.  Each Hospital Contractor provides Professional Services for agrees to indemnify and hold the Contractor

3

harmless from any and all claims, actions, liabilities, losses, damages for personal injury or property damages, and expenses (including attorneys' fees of counsel chosen by Contractor, and costs of defense regardless of outcome), which are brought against or may be brought against Contractor: (i) which arise or may arise as a result of any conduct, acts or omissions of Health System or a Hospital; or (ii) for any criminal conduct or intentional wrongdoing by a Hospital; or (iii) the breach of this Agreement by Health System or a Hospital.

## IPR AND PAUL SERDULA, CRNA

14.

IPR contracts with physician groups to provide anesthesia services to hospitals.  IPR employs physician extenders and nurse practitioners who are licensed to provide services and who are primarily engaged in the practice of anesthesia medicine.

15.

On March 29, 2007, IPR entered into a Physician Extender Employment Agreement with Paul Serdula, CRNA, to provide nurse practitioner services at facilities under contract with IPR.

16.

IPR assigned Serdula to provide nurse practitioner services at Cobb Hospital, as managed and operated by WellStar.

## THE POLICIES

17.

ApolloMD Physician is a named insured under a liability insurance policy entitled "Office Pac-Physicians Offices" issued by Travelers Indemnity Company of America (hereinafter "General Liability Policy") (Exhibit A), Policy Number I-680-6463C028 and a policy entitled "Commercial Excess Liability (Umbrella) Insurance Policy" issued by Travelers Property Liability Casualty Company of America (hereinafter "Excess Liability Policy") (Exhibit

4

B), Policy Number ISF-CUP-4406Y636 (hereinafter "The Policies"). The Policies were in effect

at all times relevant to the claims set forth above.

## FACTUAL ALLEGATIONS

### Claims of A.L. and B.L.

18.

On October 19, 2010, A.L. and B.L. filed an action seeking damages from Wellstar in the

civil action styled A.L. and B.L., J.L.W. and M.W., T.W. and J.W., R.B., and K.T., a Minor, by

and through K.W., Conservator of the Property of K.T., and K.W. and M.T., individually v.

Wellstar Health System, Inc., in the State Court of Cobb County, Georgia, Civil Action File No.

10-A-9635-S (hereinafter the "Underlying Action").

19.

Apollo was not named as a defendant in the Underlying Action.

20.

Although Apollo was not named as a defendant in the Underlying Action, Apollo would

have been added as a defendant but for the agreement to settle any and all claims held by A.L.

and B.L.

21.

In the Underlying Action, Plaintiffs alleged that on December 8, 2008, Serdula sexually

molested A.L. while she was admitted as a patient to Wellstar at Cobb Hospital for the delivery

of a child by caesarean section.

22.

More specifically, A.L. and B.L. alleged in the Underlying Action that A.L. suffered

physical injury as a result of Serdula's actions.

5

23.

At the time of the incident, A.L. was married to B.L.

24.

In the Underlying Action, A.L. and B.L. claimed Wellstar breached its duty to look after, protect, and supervise its patients.

25.

Wellstar demanded indemnification from Tri-County pursuant to the Anesthesia Services Agreement for all costs, expenses and attorney fees it incurred as a result of A.L. and B.L.'s claims arising out of Serdula's conduct.

26.

ApolloMD Physician provided Travelers with timely notice under the General Liability Policy and the Excess Liability Policy of the direct claims of A.L. and B.L. against Apollo and Wellstar's demand for indemnification pursuant to the Anesthesia Services Agreement.

27.

Travelers denied coverage under the General Liability Policy and the Excess Liability Policy of the claims of A.L. and B.L., refused to defend Wellstar, Tri-County, ApolloMD Physician, Apollo Business, and IPR (the "Releasees"), and refused to participate in the settlement of A.L. and B.L.'s claims.

28.

The Policies were in effect at all times relevant to the claims of A.L. and B.L.

29.

Releasees continued to assert coverage under The Policies for liability arising out of the claims of A.L. and B.L.

6

30.

On March 25, 2011, A.L. and B.L. entered into an agreement with Releasees to settle any and all claims held by A.L. and B.L.

31.

In the Release given by A.L. and B.L., the parties acknowledged that in reaching the agreement, the viability of claims and assessment of risk was based on the non-professional conduct of Serdula as well as additional allegations of non-professional acts or omissions by other employees, independent contractors, and/or agents of Releasees.

32.

Releasees negotiated settlement of the claims of A.L. and B.L. not as volunteers, but as a consequence of the failure and refusal of Travelers to honor the liability coverages of The Policies and reserving all rights to pursue coverage and such other claims as may be available to Releasees against Travelers.

## Claims of J.L.W. And M.W.

33.

J.L.W. and M.W. filed an action seeking damages from Wellstar in the Underlying Action.

34.

Apollo was not named as a defendant in the Underlying Action.

35.

Although Apollo was not named as a defendant in the Underlying Action, Apollo would have been added as a defendant but for the agreement to settle any and all claims held by J.L.W. and M.W.

7

36.

In the Underlying Action, Plaintiffs alleged that on December 30, 2008, Serdula sexually molested J.L.W. while she was admitted as a patient to Wellstar at Cobb Hospital for the delivery of a child by caesarean section.

37.

More specifically, J.L.W. and M.W. alleged in the Underlying Action that J.L.W. suffered bodily injury as a result of Serdula's actions.

38.

At the time of the incident, M.W. was married to J.L.W.

39.

In the Underlying Action, J.L.W. claimed Wellstar breached its duty to look after, protect, and supervise its patients.

40.

Wellstar demanded indemnification from Tri-County pursuant to the Anesthesia Services Agreement for all costs, expenses and attorney fees it incurred as a result of J.L.W. and M.W.'s claims arising out of Serdula's conduct.

41.

ApolloMD Physician provided Travelers with timely notice under the General Liability Policy and the Excess Liability Policy of the claims of J.L.W. and M.W.

42.

Travelers denied coverage under the General Liability Policy and the Excess Liability Policy of the claims of J.L.W. and M.W., refused to defend Releasees, and refused to participate in the settlement of the claims of J.L.W. and M.W.

43.

The Policies were in effect at all times relevant to the claims of J.L.W. and M.W.

44.

Releasees continue to assert coverage under The Policies for liability arising out of the claims of J.L.W. and M.W.

45.

On March 25, 2011, J.L.W. and M.W. entered into an agreement with Releasees to settle any and all claims held by J.L.W. and M.W.

46.

In the Release given by J.L.W. and M.W., the parties acknowledged that in reaching the agreement, the viability of claims and assessment of risk was based on the non-professional conduct of Serdula as well as additional allegations of non-professional acts or omissions by other employees, independent contractors, and/or agents of Releasees.

47.

Releasees negotiated settlement of the claims of J.L.W. and M.W. not as volunteers, but as a consequence of the failure and refusal of Travelers to honor the liability coverages of The Policies and reserving all rights to pursue coverage and such other claims as may be available to Releasees against Travelers.

Claims of T.W. and J.W.

48.

T.W. and J.W. filed an action seeking damages from Wellstar in the Underlying Action.

49.

Apollo was not named as a defendant in the Underlying Action.

9

50.

Although Apollo was not named as a defendant in the Underlying Action, Apollo would have been added as a defendant but for the agreement to settle any and all claims held by T.W. and J.W.

51.

In the Underlying Action, Plaintiffs alleged that on January 14, 2009, Serdula sexually molested T.W. while she was admitted as a patient to Wellstar at Cobb Hospital for the delivery of a child by caesarean section.

52.

More specifically, T.W. and J.W. alleged in the Underlying Action that T.W. suffered physical injury as a result of Serdula's actions.

53.

At the time of the incident, J.W. was married to T.W.

54.

In the Underlying Action, T.W. claimed Wellstar breached its duty to look after, protect, and supervise its patients.

55.

Wellstar demanded indemnification from Tri-County pursuant to the Anesthesia Services Agreement for all costs, expenses and attorney fees it incurred as a result of T.W. and J.W.'s claims arising out of Serdula's conduct.

56.

ApolloMD Physician provided Travelers with timely notice under the General Liability Policy and the Excess Liability Policy of the claims of T.W. and J.W.

57.

Travelers denied coverage under the General Liability Policy and the Excess Liability Policy of the claims of T.W. and J.W., refused to defend Releasees, and refused to participate in the settlement of the claims of T.W. and J.W.

58.

The Policies were in effect at all times relevant to the claims of T.W. and J.W.

59.

Releasees continue to assert coverage under The Policies for liability arising out of the claims of T.W. and J.W.

60.

On March 25, 2011, T.W. and J.W. entered into an agreement with Releasees to settle any and all claims held by T.W. and J.W.

61.

In the Release given by T.W. and J.W., the parties acknowledged that in reaching the agreement, the viability of claims and assessment of risk was based on the non-professional conduct of Serdula as well as additional allegations of non-professional acts or omissions by other employees, independent contractors, and/or agents of the Releasees.

62.

Releasees negotiated settlement of the claims of T.W. and J.W. not as volunteers, but as a consequence of the failure and refusal of Travelers to honor the liability coverages of The Policies and reserving all rights to pursue coverage and such other claims as may be available to Releasees against Travelers.

11

**Claims of R.B.**

63.

On October 19, 2010, R.B. filed an action seeking damages from Wellstar in the Underlying Action.

64.

Apollo was not named as a defendant in the Underlying Action.

65.

Although Apollo was not named as a defendant in the Underlying Action, Apollo would have been added as a defendant but for the agreement to settle any and all claims held by R.B.

66.

In the Underlying Action, Plaintiff R.B. alleged that on August 26, 2009, Serdula sexually molested R.B. while she was admitted as a patient to Wellstar at Cobb Hospital for the delivery of a child by caesarean section.

67.

More specifically, R.B. alleged in the Underlying Action that R.B. suffered physical injury as a result of Serdula's actions.

68.

In the Underlying Action, R.B. claimed Wellstar breached its duty to look after, protect, and supervise its patients.

69.

Wellstar demanded indemnification from Tri-County pursuant to the Anesthesia Services Agreement for all costs, expenses and attorney fees it incurred as a result of R.B.'s claims arising out of Serdula's conduct.

70.

ApolloMD Physician provided Travelers with timely notice under the General Liability Policy and the Excess Liability Policy of the claims of R.B.

71.

Travelers denied coverage under the General Liability Policy and the Excess Liability Policy of the claims of R.B., refused to defend Releasees, and refused to participate in the settlement of the claims of R.B.

72.

The Policies were in effect at all times relevant to the claims of R.B.

73.

Releasees continued to assert coverage under The Policies for liability arising out of the claims of R.B.

74.

On March 25, 2011, R.B. entered into an agreement with Releasees to settle any and all claims held by R.B.

75.

In the Release given by R.B., the parties acknowledged that in reaching the agreement, the viability of claims and assessment of risk was based on the non-professional conduct of Serdula as well as additional allegations of non-professional acts or omissions by other employees, independent contractors, and/or agents of the Parties.

76.

Releasees' negotiated settlement of the claims of R.B. not as volunteers, but as a consequence of the failure and refusal of Travelers to honor the liability coverages of The

Policies and reserving all rights to pursue coverage and such other claims as may be available to Releasees against Travelers.

## CLAIMS OF K.T.

### 77.

On October 19, 2010, K.T., a minor, by and through her natural parents, K.W. and M.T., filed an action seeking damages from Wellstar in the Underlying Action.

### 78.

Apollo was not named as a defendant in the Underlying Action.

### 79.

Although Apollo was not named as a defendant in the Underlying Action, Apollo would have been added as a defendant but for the agreement to settle any and all claims held by K.T.

### 80.

In the Underlying Action, Plaintiff K.T. alleged that on August 26, 2009, Serdula sexually molested K.T., a minor, while she was admitted as a patient to Wellstar at Cobb Hospital for an emergency appendectomy.

### 81.

More specifically, K.T. alleged in the Underlying Action that K.T. suffered physical injury as a result of Serdula's actions.

### 82.

In the Underlying Action, K.T. claimed Wellstar breached its duty to look after, protect, and supervise its patients.

83.

Wellstar demanded indemnification from Tri-County pursuant to the Anesthesia Services Agreement for all costs, expenses and attorney fees it incurred as a result of K.T.'s claims arising out of Serdula's conduct.

84.

ApolloMD Physician provided Travelers with timely notice under the General Liability Policy and the Excess Liability Policy of the claims of K.T.

85.

Travelers denied coverage under the General Liability Policy and the Excess Liability Policy for the claims of K.T., refused to defend Releasees, and refused to participate in the settlement of the claims of K.T.

86.

The Policies were in effect at all times relevant to the claims of K.T.

87.

Releasees continued to assert coverage under The Policies for liability arising out of the claims of K.T.

88.

On March 25, 2011, K.T. entered into an agreement with Releasees to settle any and all claims held by K.T.

89.

In the Release given by K.T., the parties acknowledged that in reaching the agreement, the viability of claims and assessment of risk was based on the non-professional conduct of

15

Serdula as well as additional allegations of non-professional acts or omissions by other employees, independent contractors, and/or agents of the Parties.

90.

Releasees' negotiated settlement of the claims of K.T. not as volunteers, but as a consequence of the failure and refusal of Travelers to honor the liability coverages of The Policies and reserving all rights to pursue coverage and such other claims as may be available to Releasees against Travelers.

## CLAIMS OF T.D. AND W.D.

91.

T.D. and W.D. alleged that on December 6, 2008, T.D. suffered injuries and damages during her admission to Wellstar at Cobb Hospital as a result of the non-professional conduct of Serdula.

92.

Counsel for T.D. and W.D. raised various claims and threatened civil litigation proceedings against Releasees.

93.

More specifically, T.D. and W.D. alleged that T.D. suffered bodily injury as a result of Serdula's actions.

94.

Wellstar demanded indemnification from Tri-County pursuant to the Anesthesia Services Agreement for all costs, expenses and attorney fees it incurred as a result of T.D. and W.D.'s claims arising out of Serdula's conduct.

16

95.

ApolloMD Physician provided Travelers with timely notice under the General Liability Policy and the Excess Liability Policy of the claims of T.D. and W.D.

96.

Travelers denied coverage under the General Liability Policy and the Excess Liability Policy for the claims of T.D. and W.D., refused to defend Releasees, and refused to participate in the settlement of the claims of T.D. and W.D.

97.

The Policies were in effect at all times relevant to the claims of T.D. and W.D.

98.

Releasees continued to assert coverage under The Policies for liability arising out of the claims of T.D. and W.D.

99.

On March 25, 2011, T.D. and W.D. entered into an agreement with Releasees to settle any and all claims held by T.D. and W.D.

100.

In the Release given by T.D. and W.D., the parties acknowledged that in reaching the agreement, the viability of claims and assessment of risk was based on the non-professional conduct of Serdula as well as additional allegations of non-professional acts or omissions by other employees, independent contractors, and/or agents of the Parties.

101.

Releasees negotiated settlement of the claims of T.D. and W.D. not as volunteers, but as a consequence of the failure and refusal of Travelers to honor the liability coverages of The

17

Policies and reserving all rights to pursue coverage and such other claims as may be available to Releasees against Travelers.

<u>CLAIMS OF S.M. AND J.M.</u>

102.

S.M. and J.M. alleged that on October 20, 2009, S.M. suffered injuries and damages during her admission to Wellstar at Cobb Hospital as a result of the non-professional conduct of Serdula.

103.

Counsel for S.M. and J.M. raised various claims and threatened civil litigation proceedings against Releasees.

104.

More specifically, S.M. and J.M. alleged that S.M. suffered bodily injury as a result of Serdula's actions.

105.

Wellstar demanded indemnification from Tri-County pursuant to the Anesthesia Services Agreement for all costs, expenses and attorney fees it incurred as a result of S.M. and J.M.'s claims arising out of Serdula's conduct.

106.

ApolloMD Physician provided Travelers with timely notice under the General Liability Policy and the Excess Liability Policy of the claims of S.M. and J.M.

107.

Travelers denied coverage under the General Liability Policy and the Excess Liability Policy for the claims of S.M. and J.M., refused to defend Releasees, and refused to participate in the settlement of the claims of S.M. and J.M.

108.

The Policies were in effect at all times relevant to the claims of S.M. and J.M.

109.

Releasees continued to assert coverage under The Policies for liability arising out of the claims of S.M. and J.M.

110.

On March 29, 2011, S.M. and J.M. entered into an agreement with Releasees to settle any and all claims held by S.M. and J.M.

111.

In the Release given by S.M. and J.M., the parties acknowledged that in reaching the agreement, the viability of claims and assessment of risk was based on the non-professional conduct of Serdula as well as additional allegations of non-professional acts or omissions by other employees, independent contractors, and/or agents of the Parties.

112.

Releasees negotiated settlement of the claims of S.M. and J.M. not as volunteers, but as a consequence of the failure and refusal of Travelers to honor the liability coverages of The Policies and reserving all rights to pursue coverage and such other claims as may be available to Releasees against Travelers.

19

## CLAIMS OF K.M.

113.

K.M. alleged that on or about May 27, 2009 through May 29, 2009, K.M. suffered injuries and damages during her admission to Wellstar at Cobb Hospital as a result of the non-professional conduct of Serdula.

114.

Counsel for K.M. raised various claims and threatened civil litigation proceedings against Releasees.

115.

More specifically, K.M. alleged that K.M. suffered bodily injury as a result of Serdula's actions.

116.

Wellstar demanded indemnification from Tri-County pursuant to the Anesthesia Services Agreement for all costs, expenses and attorney fees it incurred as a result of K.M.'s claims arising out of Serdula's conduct.

117.

ApolloMD Physician provided Travelers with timely notice under the General Liability Policy and the Excess Liability Policy of the claims of K.M.

118.

Travelers denied coverage under the General Liability Policy and the Excess Liability Policy for the claims of K.M., refused to defend Releasees, and refused to participate in the settlement of the claims of K.M.

119.

The Policies were in effect at all times relevant to the claims of K.M.

120.

Releasees continued to assert coverage under The Policies for liability arising out of the claims of K.M.

121.

On March 21, 2011, K.M. entered into an agreement with Releasees to settle any and all claims held by K.M.

122.

In the Release given by K.M., the parties acknowledged that in reaching the agreement, the viability of claims and assessment of risk was based on the non-professional conduct of Serdula as well as additional allegations of non-professional acts or omissions by other employees, independent contractors, and/or agents of the Parties.

123.

Releasees' negotiated settlement of the claims of K.M. not as volunteers, but as a consequence of the failure and refusal of Travelers to honor the liability coverages of The Policies and reserving all rights to pursue coverage and such other claims as may be available to Releasees against Travelers.

## CLAIMS OF K.J.

124.

K.J. alleged that on June 26, 2009, K.J. suffered injuries and damages during her admission to Wellstar at Cobb Hospital as a result of the non-professional conduct of Serdula.

21

125.

Counsel for K.J. raised various claims and threatened civil litigation proceedings against Releasees.

126.

More specifically, K.J. alleged that K.M. suffered bodily injury as a result of Serdula's actions.

127.

Wellstar demanded indemnification from Tri-County pursuant to the Anesthesia Services Agreement for all costs, expenses and attorney fees it incurred as a result of K.J.'s claims arising out of Serdula's conduct.

128.

ApolloMD Physician provided Travelers with timely notice under the General Liability Policy and the Excess Liability Policy of the claims of K.J.

129.

Travelers denied coverage under the General Liability Policy and the Excess Liability Policy for the claims of K.J., refused to defend Releasees, and refused to participate in the settlement of the claims of K.J.

130.

The Policies were in effect at all times relevant to the claims of K.J.

131.

Releasees continued to assert coverage under The Policies for liability arising out of the claims of K.J.

132.

On March 25, 2011, K.J. entered into an agreement with Releasees to settle any and all claims held by K.J.

133.

In the Release given by K.J., the parties acknowledged that in reaching the agreement, the viability of claims and assessment of risk was based on the non-professional conduct of Serdula as well as additional allegations of non-professional acts or omissions by other employees, independent contractors, and/or agents of the Parties.

134.

Releasees' negotiated settlement of the claims of K.J. not as volunteers, but as a consequence of the failure and refusal of Travelers to honor the liability coverages of The Policies and reserving all rights to pursue coverage and such other claims as may be available to Releasees against Travelers.

### CLAIMS OF I.C.

135.

I.C. alleged that on November 7, 2008, I.C. suffered injuries and damages during her admission to Wellstar at Cobb Hospital as a result of the non-professional conduct of Serdula.

136.

Counsel for I.C. raised various claims and threatened civil litigation proceedings against Releasees.

137.

More specifically, I.C. alleged that I.C. suffered bodily injury as a result of Serdula's actions.

23

138.

Wellstar demanded indemnification from Tri-County pursuant to the Anesthesia Services Agreement for all costs, expenses and attorney fees it incurred as a result of I.C.'s claims arising out of Serdula's conduct.

139.

ApolloMD Physician provided Travelers with timely notice under the General Liability Policy and the Excess Liability Policy of the claims of I.C.

140.

Travelers denied coverage under the General Liability Policy and the Excess Liability Policy for the claims of I.C., refused to defend Releasees, and refused to participate in the settlement of the claims of I.C.

141.

The Policies were in effect at all times relevant to the claims of I.C.

142.

Releasees continued to assert coverage under The Policies for liability arising out of the claims of I.C.

143.

On March 25, 2011, I.C. entered into an agreement with Releasees to settle any and all claims held by I.C.

144.

In the Release given by I.C., the parties acknowledged that in reaching the agreement, the viability of claims and assessment of risk was based on the non-professional conduct of Serdula

as well as additional allegations of non-professional acts or omissions by other employees, independent contractors, and/or agents of the Parties.

145.

Releasees' negotiated settlement of the claims of I.C. not as volunteers, but as a consequence of the failure and refusal of Travelers to honor the liability coverages of The Policies and reserving all rights to pursue coverage and such other claims as may be available to Releasees against Travelers.

CLAIMS OF V.R.

146.

V.R. alleged that on November 11, 2008, V.R. suffered injuries and damages during her admission to Wellstar at Cobb Hospital as a result.of the non-professional conduct of Serdula.

147.

Counsel for V.R. raised various claims and threatened civil litigation proceedings against Releasees.

148.

More specifically, V.R. alleged that V.R. suffered bodily injury as a result of Serdula's actions.

149.

Wellstar demanded indemnification from Tri-County pursuant to the Anesthesia Services Agreement for all costs, expenses and attorney fees it incurred as a result of V.R.'s claims arising out of Serdula's conduct.

150.

ApolloMD Physician provided Travelers with timely notice under the General Liability Policy and the Excess Liability Policy of the claims of V.R.

151.

Travelers denied coverage under the General Liability Policy and the Excess Liability Policy for the claims of V.R., refused to defend Releasees, and refused to participate in the settlement of the claims of V.R.

152.

The Policies were in effect at all times relevant to the claims of V.R.

153.

Releasees continued to assert coverage under The Policies for liability arising out of the claims of V.R.

154.

On March 21, 2011, V.R. entered into an agreement with Releasees to settle any and all claims held by V.R.

155.

In the Release given by V.R., the parties acknowledged that in reaching the agreement, the viability of claims and assessment of risk was based on the non-professional conduct of Serdula as well as additional allegations of non-professional acts or omissions by other employees, independent contractors, and/or agents of the Parties.

156.

Releasees' negotiated settlement of the claims of V.R. not as volunteers, but as a consequence of the failure and refusal of Travelers to honor the liability coverages of The

Policies and reserving all rights to pursue coverage and such other claims as may be available to Releasees against Travelers.

## COUNT I

## BREACH OF CONTRACT- GENERAL LIABILITY POLICY

### 157.

Travelers issued Policy Number I-680-6463C028 to ApolloMD Physician, a General Liability Policy, that was in effect at all times relevant to the Underlying Action and allegations of the claimants.

### 158.

The General Liability Policy contains the following insuring agreement:

**SECTION I – COVERAGES**
**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
1. **Insuring Agreement**
   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.

### 159.

The term "bodily injury" is defined in the General Liability Policy as follows:

**SECTION V – DEFINITIONS**
*****
3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

### 160.

The allegations contained in the Underlying Action and by the other claimants qualify as "bodily injury" to which the General Liability Policy applies.

27

161.

The General Liability Policy defines in relevant part insured persons as follows:

**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations as:

*****

    c.  A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

    d.  An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors...

162.

Plaintiffs qualify as insureds under the General Liability Policy.

163.

The term "insured contract" is defined in the General Liability Policy as follows:

**SECTION V – DEFINITIONS**

*****

9. "Insured contract" means:

*****

    f.  That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

164.

The Anesthesia Services Agreement qualifies as an "Insured contract" under the General Liability Policy.

165.

The General Liability Policy contains the following endorsement:

28

**PROFESSIONAL SERVICES EXCLUSION—SERVICES FURNISHED
BY HEALTH CARE PROVIDERS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2.**, **Exclusions of Sections I –
Coverage A – Bodily Injury and Property Damage Liability and Paragraph 2.,
Exclusions of Section I – Coverage B – Personal And Advertising Injury
Liability:**

This insurance does not apply to "bodily injury", "property damage", "personal
injury" or "advertising injury" arising out of:

1. The rendering of or failure to render:

   a. Any medical, surgical, dental, x-ray or nursing service, treatment, advice
      or instruction, or related furnishing of food or beverages;

   b. any health or therapeutic service, treatment, advice or instruction;

                            *****

2. The furnishing or dispensing of drugs or medical, dental or surgical supplies
   or appliances;

                            *****

This exclusion applies even if the claim against any insured alleges negligence or
other wrongdoing in the supervision, hiring, employment, training, or monitoring
of others by that insured.


                            166.

The Professional Services Exclusion does not apply to the allegations in the Underlying

Action or those made by other claimants because the bodily injuries did not arise out of

professional services.

                            167.

Coverage under the General Liability Policy applies to Releasees for the damages

claimed due to the actions of Serdula and Travelers had a duty to defend and indemnify

Releasees.


                            29

168.

Travelers failed and refused to defend Releasees against the allegations of the Underlying

Action or the allegations of other claimants.

169.

Travelers refuses to indemnify Releasees for the settlement of the claims alleged in the

Underlying action or those of the other claimants.

170.

Travelers has breached the terms of its contract with ApolloMD Physicians and the other

Releasees to provide liability insurance coverage and therefore is liable to Plaintiffs for its loss

and/or damages as a result of the Underlying Action and the other claims, including but not

limited to, its costs of settlement.

## COUNT II

## BREACH OF CONTRACT- EXCESS LIABILITY POLICY

171.

Travelers issued Policy Number ISF-CUP-4406Y636 1 to ApolloMD Physicians, an

Excess Liability Policy, that was in effect at all times relevant to the Underlying Action and

allegations of the claimants.

172.

The Excess Liability Policy defines in relevant part insured persons as follows:

SECTION II – WHO IS AN INSURED

1.  If you are designated in the Declarations as:

*****

b.  A limited liability company, you are an insured.  Your members are also
    insureds, but only with respect to the conduct of your business.  Your
    managers are insureds, but only with respect to their duties as your
    managers.

30

c.  An organization other than a partnership, joint venture or limited liability company, you are an insured.

173.

Plaintiffs qualify as insureds under the Excess Liability Policy.

174.

The term "bodily injury" is defined in the Excess Liability Policy as follows:

**SECTION V – DEFINITIONS**
*****

6.  "Bodily injury" means bodily injury, shock, fright, mental injury, disability, mental anguish, humiliation, sickness or disease sustained by a person, including death resulting from any of these at any time.

175.

The allegations contained in the Underlying Action and by the other claimants qualify as "bodily injury" to which the Excess Liability Policy applies.

176.

The term "underlying insurance" is defined in the Excess Liability Policy as follows:

**SECTION V – DEFINITIONS**
*****

17.  "Underlying insurance" means the policies listed in the Schedule of Underlying Insurance and includes:
    a.  Any renewal or replacement of such policies; and
    b.  Any other insurance available to the insured.

177.

The General Liability Policy qualifies as "Underlying insurance" to which the Excess Liability Policy applies.

178.

The Excess Liability Policy contains the following endorsement:

31

## PROFESSIONAL SERVICES EXCLUSION—SERVICES FURNISHED BY HEALTH CARE PROVIDERS

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE

The following exclusion is added to Paragraph **3.**, **EXCLUSIONS OF SECTIONS I – COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY AND PARAGRAPH 2., EXCLUSIONS OF SECTION I – COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY:**

This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" arising out of:

1. The rendering of or failure to render:

    a. Any medical, surgical, dental, x-ray or nursing service, treatment, advice or instruction, or related furnishing of food or beverages;

    b. any health or therapeutic service, treatment, advice or instruction;

    *****

2. The furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances;

    *****

This exclusion applies even if the claim against any insured alleges negligence or other wrongdoing in the supervision, hiring, employment, training, or monitoring of others by that insured.

179.

The Professional Services Exclusion does not apply to the allegations in the Underlying Action or those made by other claimants because the bodily injuries did not arise out of professional services.

180.

Coverage under the Excess Liability Policy applies to Releasees for the damages claimed due to the actions of Serdula and Travelers had a duty to defend and indemnify Releasees.

32

181.

Travelers failed and refused to defend Releasees against the allegations of the Underlying Action or the allegations of other claimants.

182.

Travelers refuses to indemnify Releasees for the settlement of the claims alleged in the Underlying action or those of the other claimants.

183.

Travelers has breached the terms of its contract with ApolloMD Physicians and the other Releasees to provide excess liability insurance coverage and therefore is liable to Plaintiffs for its loss and/or damages as a result of the Underlying Action and the other claims, including but not limited to, its costs of settlement.

[the remainder of this page left blank intentionally]

## COUNT III
## BAD FAITH AND ATTORNEYS FEES

184.

Pursuant to the provisions of O.C.G.A. § 33-4-6, Apollo made a demand on Travelers to defend, settle and/or indemnify them against the allegations of the Underlying Action and the other claims.  Travelers refused to defend, settle or indemnify Apollo without lawful exclusion or reason, acting in bad faith, and has become liable to Plaintiffs in addition to any loss or damage suffered by Plaintiffs as a result thereof, in a sum equal to 50% of the liability for said damages and a reasonable attorney's fee for the prosecution of this Complaint.

WHEREFORE, Plaintiffs demand judgment in their favor against Defendants for all loss incurred due to the Underlying Action or other claims, a bad faith penalty equal to 50% of said amounts, and all expenses of litigation and reasonable attorneys' fees for the prosecution of this Complaint.  Plaintiff prays for such further relief as this Honorable Court deems just and that costs be cast against Defendants.

PLAINTIFFS' DEMAND a full panel of twelve competent and impartial jurors to be called for the purpose of striking a jury in this matter pursuant to O.C.G.A. § 15-12-122(b).

DENNIS, CORRY, PORTER & SMITH, L.L.P.

By:_____
ASSUNTA FIORINI
Georgia Bar No. 215851
For the Firm
Attorney for Plaintiffs

3535 Piedmont Road, NE
14 Piedmont Center, Suite 900
Atlanta, Georgia 30305-4611
Telephone:   (404) 365-0102
Facsimile:    (404) 365-0134

# EXHIBIT A

TABLE OF CONTENTS

# COMMERCIAL GENERAL LIABILITY
# COVERAGE FORM
## CG 00 01 10 01

SECTION I—COVERAGES

Beginning on Page

Coverage A -
  Bodily Injury and Property
  Damage Liability         Insuring Agreement ...............................................1

                           Exclusions ...........................................................2

Coverage B -
  Personal and Advertising
  Injury Liability          Insuring Agreement ...............................................5

                           Exclusions ...........................................................5

Coverage C -
  Medical Payments          Insuring Agreement ...............................................7

                           Exclusions ...........................................................7

  Supplementary Payments ..................................................................7

SECTION II—WHO IS AN INSURED ..............................................................8

SECTION III—LIMITS OF INSURANCE ..........................................................10

SECTION IV—COMMERCIAL GENERAL LIABILITY CONDITIONS .......................................10

  Bankruptcy ................................................................................10
  Duties In the Event of Occurrence, Claim or Suit .........................................10
  Legal Action Against Us ..................................................................11
  Other Insurance ..........................................................................11
  Premium Audit ............................................................................12
  Representations ..........................................................................12
  Separation of Insureds ...................................................................12
  Transfer of Rights of Recovery Against Others To Us ......................................12
  When We Do Not Renew .....................................................................12

SECTION V—DEFINITIONS .....................................................................12

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II -- Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V -- Definitions.

## SECTION I -- COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III -- Limits Of Insurance; and

      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments -- Coverages A and B.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2) The "bodily injury" or "property damage" occurs during the policy period; and

      (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II -- Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II -- Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

   d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II -- Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

      (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

      (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

      (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.



COMMERCIAL GENERAL LIABILITY

e.  Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2.  Exclusions

This insurance does not apply to:

a.  Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b.  Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c.  Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d.  Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e.  Employer's Liability

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

f.  Pollution

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such

© ISO Properties Inc., 2000  CG 00 01 10 01

premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the

"bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

© ISO Properties Inc., 2000

COMMERCIAL GENERAL LIABILITY

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g. **Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

h. **Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i. **War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j. **Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

© ISO Properties Inc., 2000   CG 00 01 10 01

COMMERCIAL GENERAL LIABILITY

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k.  **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

l.  **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m.  **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n.  **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

o.  **Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III -- Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

1.  **Insuring Agreement**

a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments -- Coverages A and B.

b.  This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

2.  **Exclusions**

This insurance does not apply to:

a.  **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

© ISO Properties Inc., 2000

COMMERCIAL GENERAL LIABILITY

b. **Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

c. **Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

d. **Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

e. **Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

f. **Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

g. **Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

h. **Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

i. **Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

j. **Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of websites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs 14.a., b. and c. of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

k. **Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

l. **Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

m. **Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

n. **Pollution-Related**

Any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding

© ISO Properties Inc., 2000

CG 00 01 10 01

COMMERCIAL GENERAL LIABILITY

to, or assessing the effects of, "pollut-ants".

## COVERAGE C MEDICAL PAYMENTS

1. Insuring Agreement

   a. We will pay medical expenses as described below for "bodily injury" caused by an acci-dent:

      (1) On premises you own or rent;

      (2) On ways next to premises you own or rent; or

      (3) Because of your operations;

      provided that:

      (1) The accident takes place in the "coverage territory" and during the policy period;

      (2) The expenses are incurred and reported to us within one year of the date of the accident; and

      (3) The injured person submits to examina-tion, at our expense, by physicians of our choice as often as we reasonably require.

   b. We will make these payments regardless of fault. These payments will not exceed the ap-plicable limit of insurance. We will pay rea-sonable expenses for:

      (1) First aid administered at the time of an accident;

      (2) Necessary medical, surgical, x-ray and dental services, including prosthetic de-vices; and

      (3) Necessary ambulance, hospital, profes-sional nursing and funeral services.

2. Exclusions

   We will not pay expenses for "bodily injury":

   a. Any Insured

      To any insured, except "volunteer work-ers".

   b. Hired Person

      To a person hired to do work for or on behalf of any insured or a tenant of any insured.

   c. Injury On Normally Occupied Premises

      To a person injured on that part of prem-ises you own or rent that the person nor-mally occupies.

   d. Workers Compensation And Similar Laws

      To a person, whether or not an "em-ployee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

   e. Athletics Activities

      To a person injured while taking part in athletics.

   f. Products-Completed Operations Haz-ard

      Included within the "products-completed operations hazard".

   g. Coverage A Exclusions

      Excluded under Coverage A.

   h. War

      Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS -- COVERAGES A AND B

1. We will pay, with respect to any claim we investi-gate or settle, or any "suit" against an insured we defend:

   a. All expenses we incur.

   b. Up to $250 for cost of bail bonds required be-cause of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   d. All reasonable expenses incurred by the in-sured at our request to assist us in the inves-tigation or defense of the claim or "suit", in-cluding actual loss of earnings up to $250 a day because of time off from work.

   e. All costs taxed against the insured in the "suit".

   f. Prejudgment interest awarded against the in-sured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment



COMMERCIAL GENERAL LIABILITY

interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

© ISO Properties Inc., 2000

COMMERCIAL GENERAL LIABILITY

2. Each of the following is also an Insured:

a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

(1) "Bodily injury" or "personal and advertising injury":

(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

(b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

(d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

(a) Owned, occupied or used by,

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

COMMERCIAL GENERAL LIABILITY

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. Bankruptcy

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person

© ISO Properties Inc., 2000  CG 00 01 10 01

COMMERCIAL GENERAL LIABILITY

or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. Primary Insurance

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. Excess Insurance

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b) That is Fire Insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I – Coverage A – Bodily Injury And Property Damage Liability.

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c. Method Of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contrib-

COMMERCIAL GENERAL LIABILITY

ute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

5. **Premium Audit**

   a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

   b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

   c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

6. **Representations**

   By accepting this policy, you agree:

   a. The statements in the Declarations are accurate and complete;

   b. Those statements are based upon representations you made to us; and

   c. We have issued this policy in reliance upon your representations.

7. **Separation Of Insureds**

   Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

   a. As if each Named Insured were the only Named Insured; and

   b. Separately to each insured against whom claim is made or "suit" is brought.

8. **Transfer Of Rights Of Recovery Against Others To Us**

   If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9. **When We Do Not Renew**

   If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

   If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V – DEFINITIONS

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

   c. All other parts of the world if the injury or damage arises out of:

      (1) Goods or products made or sold by you in the territory described in a. above;

      (2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or

      (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

© ISO Properties, Inc., 2000                CG 00 01 10 01

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   If such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property

damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b. While it is in or on an aircraft, watercraft or "auto"; or

   c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical

 © ISO Properties Inc., 2000

COMMERCIAL GENERAL LIABILITY

device, other than a hand truck, that is not at-tached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    b. Vehicles maintained for use solely on or next to premises you own or rent;

    c. Vehicles that travel on crawler treads;

    d. Vehicles, whether self-propelled or not, main-tained primarily to provide mobility to perma-nently mounted:

        (1) Power cranes, shovels, loaders, diggers or drills; or

        (2) Road construction or resurfacing equip-ment such as graders, scrapers or rollers;

    e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the fol-lowing types:

        (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

        (2) Cherry pickers and similar devices used to raise or lower workers;

    f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

    However, self-propelled vehicles with the fol-lowing types of permanently attached equip-ment are not "mobile equipment" but will be considered "autos":

        (1) Equipment designed primarily for:

            (a) Snow removal;

            (b) Road maintenance, but not construc-tion or resurfacing; or

            (c) Street cleaning;

        (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

        (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    a. False arrest, detention or imprisonment;

    b. Malicious prosecution;

    c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occu-pancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    d. Oral or written publication, in any manner, of material that slanders or libels a person or or-ganization or disparages a person's or or-ganization's goods, products or services;

    e. Oral or written publication, in any manner, of material that violates a person's right of pri-vacy;

    f. The use of another's advertising idea in your "advertisement"; or

    g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

    a. Includes all "bodily injury" and "property dam-age" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        (1) Products that are still in your physical possession; or

        (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

            (a) When all of the work called for in your contract has been completed.

            (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

            (c) When that part of the work done at a job site has been put to its intended

 © ISO Properties Inc., 2000 CG 00 01 10 01

use by any person or organization other than another contractor or sub-contractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

    (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

    (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

    (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured

must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

    (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

      (a) You;

      (b) Others trading under your name; or

      (c) A person or organization whose business or assets you have acquired; and

    (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

    (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    (2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

a. Means:

    (1) Work or operations performed by you or on your behalf; and

    (2) Materials, parts or equipment furnished in connection with such work or operations.

COMMERCIAL GENERAL LIABILITY

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

(2) The providing of or failure to provide warnings or instructions.

© ISO Properties Inc., 2000   CG 00 01 10 01

COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AMENDMENT OF COVERAGE – POLLUTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**PROVISIONS**

Paragraph f.(2) Pollution, Part 2. Exclusions of SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY is deleted and replaced by the following:

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, re- move, contain, treat, detoxify or neutral- ize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or "suit" by or on behalf of a gov- ernmental authority because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neu- tralizing, or in any way responding to, or assessing the effects of "pollutants".

 Copyright, The Travelers Indemnity Company, 2003

COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AMENDATORY ENDORSEMENT – PRODUCTS-COMPLETED OPERATIONS HAZARD

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**PROVISIONS**

The definition of "products-completed operations hazard" Section V – Definitions is amended by deleting item 16.b. (3) and replacing it with:

(3) Products or operations for which the classification, listed in the Declarations, in a policy schedule or in our manual of rules, states that the products-completed operations are subject to the General Aggregate Limit.

Copyright, The Travelers Indemnity Company, 2003
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART
> UNDERGROUND STORAGE TANK POLICY

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursu-

ant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# OTHER INSURANCE – ADDITIONAL INSUREDS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

PROVISIONS

COMMERCIAL GENERAL LIABILITY CONDITIONS (Section IV), Paragraph 4. (Other Insurance), is amended as follows:

1. The following is added to Paragraph a. Primary Insurance:

   However, if you specifically agree in a written contract or written agreement that the insurance provided to an additional insured under this Coverage Part must apply on a primary basis, or a primary and non-contributory basis, this insurance is primary to other insurance that is available to such additional insured which covers such additional insured as a named insured, and we will not share with that other insurance, provided that:

   a. The "bodily injury" or "property damage" for which coverage is sought occurs; and

   b. The "personal injury" or "advertising injury" for which coverage is sought arises out of an offense committed

   subsequent to the signing and execution of that contract or agreement by you.

2. The first Subparagraph (2) of Paragraph b. Excess Insurance regarding any other primary insurance available to you is deleted.

3. The following is added to Paragraph b. Excess Insurance, as an additional subparagraph under Subparagraph (1):

   That is available to the insured when the insured is added as an additional insured under any other policy, including any umbrella or excess policy.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WEB XTEND LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## PROVISIONS

Paragraph o. Personal And Advertising Injury, Part 2. Exclusions of SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY is deleted and replaced by the following:

o.  Personal Injury, Advertising Injury and Web Site Injury

"Bodily injury" arising out of "personal injury", "advertising injury" or "web site injury".

COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY (SECTION I – COVERAGES) is deleted in its entirety and replaced by the following:

COVERAGE B. PERSONAL INJURY, ADVERTISING INJURY AND WEB SITE INJURY LIABILITY

1.  Insuring Agreement.

a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury", "advertising injury" or "web site injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal injury", "advertising injury", or "web site injury" to which this insurance does not apply. We may at our discretion investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

(1)  The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2)  Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly

provided for under Supplementary Payments – Coverages A and B.

b.  This insurance applies to:

(1)  "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

(2)  "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services; or

(3)  "Web site injury" caused by an offense committed in the course of the visual or audio presentation of material on "your web site" or in the numerical expression of computer code used to enable "your web site";

but only if the offense was committed in the "coverage territory" during the policy period.

With respect to subparagraph b. (1) above, bulletins, financial or annual reports, or newsletters that are not published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters will not be considered publishing.

2.  Exclusions.

This insurance does not apply to:

a.  Knowing Violation Of Rights Of Another

"Personal injury", "advertising injury" or "web site injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal injury", "advertising injury" or "web site injury".

b.  Material Published With Knowledge Of Falsity

"Personal injury", "advertising injury" or "web site injury" arising out of oral, written or electronic publication of material, if done by or at the direction of the insured with knowledge of its falsity.

COMMERCIAL GENERAL LIABILITY

c. Material Published Prior To Policy Period

"Personal injury", "advertising injury" or "web site injury" arising out of oral, written or electronic publication of material whose first publication took place before the beginning of the policy period.

d. Criminal Acts

"Personal injury", "advertising injury" or "web site injury" arising out of a criminal act committed by or with the consent of the insured.

e. Contractual Liability

"Personal injury", "advertising injury" or "web site injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to: .

(1) "Personal injury" liability assumed in a contract or agreement that is an "insured contract", provided the "personal injury" arises out of an offense committed subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "personal injury" provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged; or

(2) "Personal injury", "advertising injury" or "web site injury" that the insured would have in the absence of the contract or agreement.

f. Breach Of Contract

"Advertising injury" or "web site injury" arising out of a breach of contract.

g. Quality Or Performance Of Goods – Failure To Conform To Statements

"Advertising injury" or "web site injury" arising out of the failure of goods, products or services to conform with any statement of quality

or performance made in the course of advertising your goods, products or services.

h. Wrong Description Of Prices

"Advertising injury" or "web site injury" arising out of the wrong description of the price of goods, products or services.

i. Insureds In Media And Internet Type Businesses

"Personal injury", "advertising injury" or "web site injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of websites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs a., b. and c. of the "personal injury" definition under SECTION V – DEFINITIONS of this endorsement.

For the purposes of this exclusion, bulletins, financial or annual reports, or newsletters that are not published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters will not be considered publishing.

j. Electronic Chatrooms Or Bulletin Boards

"Personal injury", "advertising injury" or "web site injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

k. Unauthorized Use Of Another's Name Or Product

"Personal injury", "advertising injury" or "web site injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar activities that mislead another's potential customers.

l. Pollution

"Personal injury", "advertising injury" or "web site injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

    Copyright 2005 The St. Paul Travelers Companies, Inc. All rights reserved.    CG D2 34 01 05

m. Pollution-Related

Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or "suit" by or on behalf of a governmental authority because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to, or assessing the effects of, "pollutants".

n. Dishonest, Fraudulent Or Malicious Acts

"Web site injury" arising out of dishonest, fraudulent, criminal or malicious acts, errors or omissions committed by any insured, or by anyone for whom the insured is legally responsible, whether acting alone or with others.

o. Web Site Intellectual Property

"Web site injury" committed by any insured whose business is providing access to intellectual property of others via "your web site".

p. Employment-Related Practices

"Web site injury" to:

(1) A person arising out of any:

(a) Refusal to employ that person;

(b) Termination of that person's employment; or

(c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in paragraphs p.(1)(a)(b) or (c) above is directed.

This exclusion applies:

(i) Whether the insured may be held liable as an employer or in any other capacity; and

(ii) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

SUPPLEMENTARY PAYMENTS -- COVERAGES A AND B (Section I -- Coverages) is amended as follows:

1. Paragraph 2.d. is deleted and replaced by the following:

d. The allegations in the "suit" and the information we know about the "occurrence" or offense are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

2. The third sentence of Paragraph 2. is deleted and replaced by the following:

Notwithstanding the provisions of Paragraph 2.b.(2) of Section I -- Coverage A -- Bodily Injury And Property Damage Liability and Paragraph 2.e.(1) of Section I -- Coverage B -- Personal Injury, Advertising Injury And Web Site Injury Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage", or damages for "personal injury", and will not reduce the limits of insurance.

SECTION II -- WHO IS AN INSURED

The introductory sentence of paragraph 2. a. (1) Section II -- Who Is An Insured is deleted and replaced by the following:

2. a. (1) "Bodily injury", "personal injury" or "web site injury":

Section II -- Who Is An Insured, paragraph 4. c., is deleted and replaced by the following:

4. c. Coverage B does not apply to "personal injury", "advertising injury" or "web site injury" arising out of an offense committed before you acquired or formed the organization.

SECTION III -- LIMITS OF INSURANCE

SECTION III -- Limits Of Insurance, paragraph 4, is deleted and replaced by the following:

4. Subject to 2. above, the Personal, Advertising and Web Site Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal injury", "advertising injury" and all "web site injury" sustained by any one person or organization.

COMMERCIAL GENERAL LIABILITY

## SECTION V – DEFINITIONS

### ADVERTISEMENT

The definition of "Advertisement" (SECTION V – DEFINITIONS) is deleted in its entirety.

### COVERAGE TERRITORY

The definition of "Coverage Territory" (SECTION V – DEFINITIONS) is deleted in its entirety and replaced by the following:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

c. All parts of the world if the injury or damage arises out of:

    (1) Goods or products made or sold by you in the territory described in a. above;

    (2) The activities of a person whose home is in the territory described in a. above, but who is away for a short time on your business; or

    (3) "Personal injury", "advertising injury", and "web site injury" offenses that take place through the Internet or similar electronic means of communication; and

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

### INSURED CONTRACT

The first paragraph of part f. of the definition of "Insured Contract" (SECTION V – DEFINITIONS) is deleted and replaced by the following:

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury", "property damage" or "personal injury" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

### PERSONAL AND ADVERTISING INJURY

The definition of "Personal and advertising injury" (SECTION V – DEFINITIONS) is deleted in its entirety and replaced by the following definitions of "advertising injury" and "personal injury";

"Advertising injury" means injury, arising out of one or more of the following offenses:

a. Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that claim is made or "suit" is brought by a person or organization that claims to have been slandered or libeled, or whose goods, products or services have allegedly been disparaged;

b. Oral, written or electronic publication of material that appropriates a person's likeness, unreasonably places a person in a false light or gives unreasonable publicity to a person's private life; or

c. Infringement of copyright, title or slogan, provided that claim is made or "suit" is brought by a person or organization claiming ownership of such copyright, title or slogan.

"Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor, provided that the wrongful eviction, wrongful entry or invasion of the right of private occupancy is performed by or on behalf of the owner, landlord or lessor of that room, dwelling or premises;

d. Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that claim is made or "suit" is brought by a person or organization that claims to have been slandered or libeled, or whose goods, products or services have allegedly been disparaged; or

e. Oral, written or electronic publication of material that appropriates a person's likeness, unreasonably places a person in a false light or gives unreasonable publicity to a person's private life.

### SUIT

The definition of "Suit" (SECTION V – DEFINITIONS) is deleted in its entirety and replaced by the following:

"Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury", "advertising injury" or "web site injury" to

 Copyright 2005 The St. Paul Travelers Companies, Inc. All rights reserved.   CG D2 34 01 05

which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

The following definitions are added to SECTION V – DEFINITIONS

WEB SITE INJURY

"Web site injury" means injury, other than "personal injury" or "advertising injury", arising out of one or more of the following offenses:

a. Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that claim is made or "suit" is brought by a person or organization that claims to have been slandered or libeled, or

whose goods, products or services have allegedly been disparaged;

b. Oral, written or electronic publication of material that appropriates a person's likeness, unreasonably places a person in a false light or gives unreasonable publicity to a person's private life;

c. Oral, written or electronic publication of material that violates a person's right of publicity, provided that claim is made or "suit" is brought by the person claiming rights of publicity; or

d. Infringement of copyright, title or slogan, provided that claim is made or "suit" is brought by a person or organization claiming ownership of such copyright, title or slogan.

YOUR WEB SITE

"Your web site" means all computer files and data which may be accessed via the Internet using a Universal Resource Locator that includes any domain name owned by or assigned to you.

COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AMENDMENT OF COVERAGE – PROPERTY DAMAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART

PROVISIONS

The definition of "property damage" in SECTION V – DEFINITIONS is deleted in its entirety and replaced by the following:

"Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

"Property damage" does not include loss of or damage to "electronic media and records".

As used in this definition, "electronic media and records" means:

a. Electronic data processing, recording or storage media such as films, tapes, discs, drums or cells;

b. Data stored on such media; or

c. Programming records for electronic data processing or electronically controlled equipment.

COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage A -- Bodily Injury And Property Damage Liability:

This insurance does not apply to:

"Bodily injury" to:

(1) A person arising out of any:

    (a) Refusal to employ that person;

    (b) Termination of that person's employment; or

    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

B. The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

This insurance does not apply to:

"Personal injury" to:

(1) A person arising out of any:

    (a) Refusal to employ that person;

    (b) Termination of that person's employment; or

    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "personal injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Copyright, The Travelers Indemnity Company, 2003
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – UNSOLICITED COMMUNICATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to "bodily injury", "property damage", "personal injury", "advertising injury" or "website injury" arising out of unsolicited communications by or on behalf of any insured. Unsolicited communications means any form of communication, including but not limited to facsimile, electronic mail, posted mail or telephone, in which the recipient has not specifically requested the communication. Unsolicited communications also include but are not limited to communications which are made or allegedly made in violation of the Telephone Consumer Protection Act and any amendments, and/or local or state statutes that bar, prohibit or penalize such communications.

COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# MOBILE EQUIPMENT REDEFINED
# EXCLUSION OF VEHICLES SUBJECT TO MOTOR VEHICLE LAWS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

PROVISIONS

A. Exclusion g. of COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages) is deleted and replaced by the following:

g. Aircraft, Auto Or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

(a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

(b) The operation of any of the machinery or equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

B. SECTION V – DEFINITIONS

The definition of "auto" (paragraph 2.) is deleted and replaced by the following:

2. "Auto" means:

a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

The definition of "mobile equipment" is deleted and replaced by the following:

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

CG D3 56 01 05    Copyright, 2005 The St. Paul Travelers Companies, Inc. All rights reserved.        Page 1 of 2



COMMERCIAL GENERAL LIABILITY

    b.  Vehicles maintained for use solely on or next to premises you own or rent;

    c.  Vehicles that travel on crawler treads;

    d.  Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        (1)  Power cranes, shovels, loaders, diggers or drills; or

        (2)  Road construction or resurfacing equipment such as graders, scrapers or rollers;

    e.  Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        (1)  Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

        (2)  Cherry pickers and similar devices used to raise or lower workers;

    f.  Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

      However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

        (1)  Equipment designed primarily for:

            (a)  Snow removal;

            (b)  Road maintenance, but not construction or resurfacing; or

            (c)  Street cleaning;

        (2)  Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

        (3)  Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

    However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**C.**  **WHO IS AN INSURED**

    Paragraph 3. of SECTION II – Who Is An Insured is deleted.

 Copyright, 2005 The St. Paul Travelers Companies, Inc. All rights reserved.   CG D3 56 01 05

COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – WAR

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. Exclusion i. under Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability is replaced by the following:

2. Exclusions:

This insurance does not apply to:

i. War

"Bodily injury" or "property damage" arising, directly or indirectly, out of:

(1) War, including undeclared or civil war; or

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these

regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage.

B. The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

2. Exclusions:

This insurance does not apply to:

War

"Personal injury" or "advertising injury" arising, directly or indirectly, out of:

(1) War, including undeclared or civil war; or

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, . rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these

regardless of any other cause or event that contributes concurrently or in any sequence to the injury.

COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# PROFESSIONAL SERVICES EXCLUSION – SERVICES FURNISHED BY HEALTH CARE PROVIDERS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability and Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" arising out of:

1.  The rendering of or failure to render:

    a.  Any medical, surgical, dental, x-ray or nursing service, treatment, advice or instruction, or the related furnishing of food or beverages;

    b.  Any health or therapeutic service, treatment, advice or instruction;

    c.  Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming; or

    d.  Any psychiatric, psychological or emotional counseling service, treatment, advice or instruction;

2.  The furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances;

3.  The handling or treatment of dead bodies, including autopsies, organ donation or other procedures; or

4.  The service by any person as a member of a formal accreditation, standards review, peer review or equivalent professional board or committee or member of any professional organization or committee.

This exclusion applies even if the claim against any insured alleges negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured.

Copyright, The Travelers Indemnity Company, 2004
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION — ASBESTOS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
CATASTROPHE UMBRELLA POLICY

This insurance does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" arising out of the actual or alleged presence or actual, alleged or threatened dispersal of asbestos, asbestos fibers or products containing asbestos, provided that the injury or damage is caused or contributed to by the hazardous properties of asbestos. This includes:

a. Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with the above; and

b. Any obligation to share damages with or repay someone else who must pay damages because of such injury or damage.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

# POLLUTION EXCLUSION – LOUISIANA

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. Paragraph f. under Paragraph 2. Exclusions is replaced by the following:

f. Pollution

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, dis-

posed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

 Copyright, The Travelers Indemnity Company, 2003   Includes copyrighted material of Insurance Services Office, Inc., with its permission.

COMMERCIAL GENERAL LIABILITY

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) (This insurance also does not apply to) "Pollution costs".

B. COVERAGE D. LIMITED COVERAGE FOR POLLUTION COSTS

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as "limited covered pollution costs" to which this insurance applies. We will have the right and duty to defend any "suit" seeking "limited covered pollution costs". We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for "limited covered pollution costs" shall be included within, and not in addition to, the Each Occurrence Limit because of all "bodily injury" and "property damage", arising out of any one "occurrence". The total amount we will pay for "limited covered pollution costs" shall be included within, and not in addition to, the limits set forth in LIMITS OF INSURANCE (Section III), paragraphs 2, and 3., whichever is applicable; and

(2) Our right and duty to defend end when we have used up the applicable

limit of insurance in the payment of judgments or settlements under COVERAGES A or B, or "limited covered pollution costs" under COVERAGE D.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A, B AND D.

b. This insurance applies to "limited covered pollution costs" only if:

(1) The "limited covered pollution costs" result from an "occurrence" that takes place in the "coverage territory"; and

(2) The same "occurrence" which results in "limited covered pollution costs" also causes "bodily injury" or "property damage" to which COVERAGE A applies.

2. Exclusions

This insurance does not apply to:

a. "Limited covered pollution costs" incurred by any person or organization other than the Named Insured shown in the Declarations.

b. "Limited covered pollution costs" which the insured is obligated to pay by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability that the insured would have to pay "limited covered pollution costs" in the absence of the contract or agreement.

c. "Limited covered pollution costs" if the "bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" is not covered under COVERAGE A.

3. SUPPLEMENTARY PAYMENTS – COVERAGES A AND B is amended to read:

SUPPLEMENTARY PAYMENTS – COVERAGES A, B, AND D.

C. The following are added to the Definitions Section:

1. "Limited covered pollution costs" means any cost or expense arising out of:

Copyright, The Travelers Indemnity Company, 2003
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CG F2 38 11 03

a. Any request, demand or order that the insured test for, monitor, cleanup, remove, contain, treat, detoxify or neutralize, or assess the effects of "pollutants"; or

b. Any claim or "suit" by or on behalf of a governmental authority demanding that the insured test for, monitor, cleanup, remove, contain, treat, detoxify or neutralize, or assess the effects of "pollutants".

"Limited covered pollution costs" shall not include:

i. Punitive or exemplary damages, or statutory or administrative fines or penalties; or

ii. Salaries or benefits paid to your employees; or

iii. Any cost or expense arising out of any request, demand or order that the insured test for, monitor, cleanup, remove, contain, treat, detoxify or neutralize, or assess the effects of "pollutants" situated on any premises, site or location which is or was at any time owned, occupied or managed by, or rented or loaned to you; or

iv. Any cost or expense arising out of any claim or "suit" by or on behalf of a governmental authority demanding that the insured test for, monitor, cleanup, remove, contain, treat, detoxify or neutralize, or assess the effects of "pollutants" situated on any premises, site or location which is or was at any time owned, occupied or managed by, rented or loaned to you.

2. "Pollution costs" means any cost or expense arising out of any:

a. Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, cleanup, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants"; or

b. Claim or "suit" by or on behalf of a governmental authority because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of "pollutants".

Copyright, The Travelers Indemnity Company, 2003
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOUISIANA CHANGES – INSURING AGREEMENT AND SUPPLEMENTARY PAYMENTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. Paragraph 1.a. of Section I – Coverages, Coverage A – Bodily Injury And Property Damage Liability is replaced with the following:

1. Insuring Agreement

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

        (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A or B or medical expenses under Coverage C. However, using up the Medical Expense Limit does not end our right and duty to defend.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

B. Paragraph 1.a. of Section I – Coverages, Coverage B – Personal And Advertising Injury Liability is replaced with the following:

1. Insuring Agreement

    a. We will pay those sums that the insured becomes legally obligated to pay as

damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C. However, using up the Medical Expense Limit does not end our right and duty to defend.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

C. Paragraph 1.g. of SUPPLEMENTARY PAYMENTS – COVERAGES A AND B is deleted and replaced by the following:

g. All interest on the full amount of any judgment that accrues from the date legal action is filed and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

© 2006, The St. Paul Travelers Companies, Inc.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.