**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

APOLLOMD PHYSICIAN
SERVICES GA, LLC; APOLLO
BUSINESS SERVICES, LLC; TRI-
COUNTY ANESTHESIA, LLC; and
INDEPENDENT PHYSICIANS
RESOURCES, INC.,

               **Plaintiffs,**

    **v.**                             **1:11-cv-3973-WSD**

TRAVELERS INDEMNITY
COMPANY OF AMERICA, and
TRAVELERS PROPERTY
CASUALTY COMPANY OF
AMERICA,

               **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Travelers Indemnity Company of America

and Travelers Property Casualty Company of America's ("Travelers" or

"Defendants") Motion for Summary Judgment [31] and ApolloMD Physician

Services GA, LLC ("ApolloMD"); Apollo Business Services, LLC ("Apollo");

Tri-County Anesthesia, LLC ("TCA"); and Independent Physician Resources,

Inc.'s ("IPR") (ApolloMD, Apollo, TCA and IPR are collectively referred to as "Plaintiffs")[1] Motion for Summary Judgment [34].

## I.    BACKGROUND

### A.    Overview

This case involves an insurance coverage dispute between Plaintiffs and Travelers.  Plaintiffs' Complaint asserts a breach of contract by Travelers on their obligations to defend and indemnify Plaintiffs for claims based on bodily injuries suffered by patients at Cobb Hospital in Cobb County, Georgia, due to sexual assaults by Paul Serdula ("Serdula"), a certified registered nurse anesthetist employed by Plaintiffs and placed by TCA at Cobb Hospital to provide anesthesia services.  Cobb Hospital is managed and operated by WellStar Health Systems, Inc. ("WellStar").

Travelers seeks summary judgment on the grounds that (i) the commercial general and excess liability insurance policies issued to Plaintiffs by Defendants do not provide coverage for bodily injuries caused by intentional sexual assaults and (ii) Plaintiffs were not obligated under the policies issued to indemnify WellStar for Serdula's conduct.  Plaintiffs seek summary judgment on the ground that

---

[1] Plaintiffs are affiliated companies that provide medical services and place contract medical personnel in hospitals.  (Dep. of Christopher B. Durham at 15-19).

Travelers is required under the insurance policies to indemnify them for payments voluntarily made to settle claims asserted against WellStar for Serdula's sexual assaults.

      B.     <u>The Professional Services Agreement</u>

On May 22, 2007, WellStar, Cobb Hospital, Inc. ("Cobb Hospital"), and TCA entered into a Professional Services Agreement (the "PSA").  (Ex. 1 to Pls.' Mot. for Summ. J.).  Under the PSA, IPR provided anesthesia paraprofessionals to TCA for placement in hospitals and other medical facilities to provide anesthesia and other medical services to patients.  (<u>Id.</u>).  WellStar was a hospital to which TCA provided paraprofessionals, including Serdula.

The PSA contained an indemnification provision:

> [TCA] agrees to indemnify and hold [WellStar and Cobb Hospital] . . . harmless from any and all claims, actions, liabilities, losses, damages for personal injury or property damages, and expenses (including attorneys' fees of counsel chosen by [WellStar and Cobb Hospital], and costs of defense regardless of outcome), which are brought or may be brought against [WellStar or Cobb Hospital]: (i) which arise or may arise as a result of any conduct, acts or omissions of [TCA], any Physician or Paraprofessional or any person providing services pursuant to or in breach of this Agreement; or (ii) for any criminal conduct or intentional wrongdoing by [TCA], any Physician or Paraprofessional or any other person providing services pursuant to this Agreement . . . .

(<u>Id.</u>).

C.     Plaintiffs' Insurance Policies

Travelers issued two commercial general liability policies and two excess coverage policies (the "Policies") to Plaintiffs covering claims arising during the period June 12, 2008, to January 7, 2010.  (Exs. 6 and 10 to Defs.' Mot. for Summ. J.).  The Policies contain materially the same coverage terms and definitions.  (Exs. 89-91 to Defs.' Mot. for Summ. J.).  The Policies provide that Travelers is obligated to pay those amounts that "the insured becomes legally obligated to pay as damages because of 'bodily injury.'"  (Exs. 89 and 90 to Defs.' Mot. for Summ. J.).[2]  The Policies also cover claims for bodily injury based on liability assumed under an "insured contract."  (Ex. 6 to Defs.' Mot. for Summ. J.).  The Policies do not provide indemnification coverage for negligence claims against third parties resulting from the third-party's negligence.  (Exs. 6 and 10 to Defs.' Mot. for Summ. J.).

The Policies limit coverage to claims of "bodily injury" caused by an "occurrence" during the policy period.  (Exs. 6, 10, 89, 90 to Defs.' Mot. for

---

[2] Medical Mutual of North Carolina ("MMNC") issued a professional liability insurance policy (the "MMNC Policy") to Plaintiffs, which included specific coverage for acts of sexual misconduct by their employees.  (Exs. 15 and 66 to Defs.' Mot. for Summ. J.).  Under the terms of the MMNC Policy, sexual misconduct includes acts that occur or arise out of the performance of professional services by Plaintiffs' employees and contractors, like the anesthesia services provided by Serdula.  (Ex. 15 to Defs.' Mot. for Summ. J.).

Summ. J.).  An "occurrence" is defined as "an accident."  (Exs. 6 and 10 to Defs.' Mot. for Summ. J.).  Under the Policies, "bodily injury" includes shock, fright, mental injury, disability, mental anguish, humiliation, sickness or disease sustained by a person.  (Id.).

The Policies contain a Professional Services Exclusion-Services Furnished by Health Care Providers ("Services Exclusion").   (Ex. 92 to Defs.' Mot. for Summ. J.).  The Services Exclusion excludes from coverage claims for "bodily injuries" that arise out of "the rendering or failure to render . . . any medical, surgical [or] nursing service [or] treatment . . . [or] the furnishing or dispensing of drugs."  (Id.).  The Services Exclusion also excludes coverage of claims based on Plaintiffs' negligence in the supervision, hiring, employment, or monitoring of Plaintiffs' employees in providing medical services.  (Id.).

The Policies require Plaintiffs (i) to notify Travelers, as soon as practicable, of an occurrence, offense, claim, or suit, (ii) to "[i]mmediately send [Travelers] copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit'", and, (iii) to "[c]ooperate with [Travelers] in the

investigation or settlement of the claim or defense against the 'suit.'" (Ex. 6 to Defs.' Mot. for Summ. J.).[3]

D.     Serdula's Employment and Sexual Assaults

On April 1, 2007, TCA placed Serdula at WellStar to provide anesthesia services to patients. (Ex. 2 to Pls.' Mot. for Summ. J.). While working at WellStar in 2008 and 2009, Serdula sexually assaulted a number of patients after administering anesthesia to prepare them for various surgeries.

On November 18, 2009, Serdula was arrested after a woman discovered a concealed recording device in the bathroom of a dentist office where Serdula performed paraprofessional services. (Ex. 3 to Pls.' Mot. for Summ. J.). During a search of Serdula's home after his arrest, videos and photographs of Serdula's sexual assaults upon patients at Cobb Hospital were discovered. (Id.).

E.     Plaintiffs' Investigation, Communications with Travelers, and Claims Settlement

On November 20, 2009, Cobb County Police Department's Crimes Against Persons Unit personnel contacted Plaintiffs about Serdula's conduct. (Id.). Three days later, on November 23, 2009, Plaintiffs notified Travelers of a potential claim under the Policies based on Serdula's sexual assault of patients under his care.

---

[3] The excess liability policies require Plaintiffs to cooperate with the underlying insurers and provide prompt, written notice of any suit or claims. (Ex. 10 to Defs.' Mot. for Summ. J.).

(Ex. 4 to Pls.' Mot. for Summ. J.).  On December 11, 2009, Plaintiffs retained an investigator to investigate the circumstances of Serdula's sexual misconduct and to determine the potential scope of Plaintiffs' liability for the conduct claimed.  (Exs. 66-69 to Dep. of R. Page Powell, Jr.).

On January 25, 2010, Plaintiffs notified Travelers of potential claims against them based on Serdula's sexual assaults of patients at Cobb Hospital.  (Ex. 2 to Pls.' Mot. for Summ. J.).[4]  That same day, Travelers responded to Plaintiffs' notification by requesting information about Serdula's employment.  (Id.).  Travelers noted that no lawsuit had been filed against Plaintiffs.  (Id.).  Travelers advised Plaintiffs that a decision on coverage had not been made and that Travelers reserved its right to determine if the Policies provided coverage.  (Id.).  Travelers invited Plaintiffs to provide "any information that [Plaintiffs] would like [Travelers] to consider in relation to [Travelers'] coverage review."  (Id.).

On March 16, 2010, Plaintiffs asked Travelers to determine if the Policies covered the claims that might be brought against them based on Serdula's conduct.  (Ex. 37 to Defs.' Mot. for Summ. J.).  On April 28, 2010, Travelers notified

---

[4] On February 2, 2010, Plaintiffs notified Travelers of correspondence received from an attorney representing one of Serdula's victims.  (Ex. 7 to Pls.' Mot. for Summ. J.).  Plaintiffs did not provide Travelers with information developed by their investigator regarding the scope of Serdula's sexual misconduct and Plaintiffs' potential liability.  (Dep. of R. Page Powell, Jr. at 231-40).

Plaintiffs that because no actions had been filed by any victim, Travelers did not yet have a duty to defend under the terms of the Policies.  (Ex. 38 to Defs.' Mot. for Summ. J.).  Travelers did give to Plaintiffs a preliminary coverage analysis based on information provided by Plaintiffs, and Travelers asked Plaintiffs to provide them with all documents and information relating to claims based on Serdula's sexual misconduct so Travelers could analyze whether there was coverage under the Policies for any claims that were asserted.  (Id.).

As early as September 15, 2010, Plaintiffs communicated with counsel for the victims of Serdula's sexual assaults and discussed with counsel claims the victims might assert based on Serdula's conduct.  (Dep. of R. Page Powell, Jr. at 245, 251-55; Exs. 15, 74-78 to Deps. of Christopher B. Durham and R. Page Powell, Jr.).  Plaintiffs did not disclose these communications to Travelers, and did not disclose any information they discussed about potential victim claims that might be asserted.  (Id.).

On October 19, 2010, ten plaintiffs, including five victims of Serdula's sexual assaults, (the "WellStar Plaintiffs") filed a Complaint for Damages in the State Court of Cobb County against WellStar (the "WellStar Complaint" and "WellStar Action").  (Ex. 9 to Pls.' Mot. for Summ. J. at 1).  The WellStar Complaint alleged claims for negligent violation of WellStar's duty to protect

patients, premises liability, negligent supervision, professional negligence, and loss of consortium.  (Id. ¶¶ 83-110).  Plaintiffs were not named defendants in the WellStar Action.  (Id. at 1).

On November 15, 2010, Plaintiffs notified its professional liability insurance carrier, MMNC, about the WellStar Action and told MMNC that Plaintiffs wanted to contribute to the settlement with the WellStar Plaintiffs because Plaintiffs' "business relationship with WellStar is quite valuable."  (Ex. 48 to Defs.' Mot. for Summ. J.).

On November 23, 2010, Plaintiffs contacted Travelers and notified them, for the first time, that the WellStar Action had been filed, providing Travelers with a copy of the WellStar Complaint.  (Exs. 10-12 to Pls.' Mot. for Summ. J.). Plaintiffs notified Travelers that the WellStar Plaintiffs' counsel had told them that Plaintiffs might be added as defendants in the WellStar Action.  (Id.).  They also told Travelers that WellStar had requested that TCA indemnify WellStar for any amounts WellStar was required to pay to resolve the claims asserted in the WellStar Action.  (Id.).

On November 29, 2010, Plaintiffs again informed Travelers that the WellStar Plaintiffs stated they were considering adding Plaintiffs as defendants to the WellStar Action if WellStar did not reach an early settlement agreement.  (Id.).

Plaintiffs told Travelers that WellStar intended to enter into early settlement negotiations with the WellStar Plaintiffs, and would seek Plaintiffs to indemnify it for any amounts paid.  (Id.).  Plaintiffs told Travelers that WellStar wanted to know if Plaintiffs intended to contribute to any settlement reached.  (Id.).  Plaintiffs told Travelers that "no formal claim for indemnity has been filed [against Plaintiffs], nor has a formal written demand for indemnity been sent by [WellStar]."  (Id.).

Plaintiffs also asked Travelers, on November 29, 2010, for the insurers' position regarding coverage for claims communicated verbally to Plaintiffs by the WellStar Plaintiffs.  (Ex. 13 to Pls.' Mot. for Summ. J.).  Travelers was told that the claims against Plaintiffs that were verbally communicated by the WellStar Plaintiffs included "[a] negligent supervision claim similar to the claim [against WellStar] set forth in Count III of the [WellStar Complaint], [a] professional malpractice claim similar to the claim [against WellStar] set forth in Count IV of the [WellStar Complaint]," and a contractual indemnification claim by WellStar based on the terms of the PSA.  (Id.).

On December 2, 2010, Plaintiffs, without Travelers' knowledge, negotiated and entered into agreements with the WellStar Plaintiffs to toll the limitations period on any claim the WellStar Plaintiffs could assert against Plaintiffs.  (Exs. 57 and 58 to Defs.' Mot. for Summ. J.; Dep. of R. Page Powell, Jr. at 309-11).

Travelers failed to respond to Plaintiffs' November 29, 2010, request for Travelers' position on coverage for potential claims under the Policies.  (Ex. 14 to Pls.' Mot. for Summ. J.).  As a result, on December 17, 2010, Plaintiffs told Travelers that WellStar was negotiating a settlement, expected Plaintiffs to indemnify it, under the terms of the PSA, for the claims based on Serdula's sexual misconduct, and expected Plaintiffs to commit to contribute to a settlement of the WellStar Action.  (Id.).

Later on December 17, 2010, Travelers advised Plaintiffs by letter (the "December 17th Letter") that Travelers had reached a preliminary determination that the Policies did not provide coverage for the potential, speculative claims that might be asserted against Plaintiffs by the WellStar Plaintiffs if an early settlement was not reached, and did not provide coverage for an indemnification claim by WellStar based on the PSA for any claims brought against WellStar based on WellStar's own alleged negligence.  (Ex. 15 to Pls.' Mot. for Summ. J.).  In the December 17th Letter, Travelers requested additional information about the claims WellStar might assert against Plaintiffs, reiterating that Travelers' coverage determination was preliminary and based on the information that previously had been provided by Plaintiffs.  (Id.).  Travelers reserved its rights and defenses regarding its coverage of any claims that might be asserted against Plaintiffs.  (Id.).

11

One ground upon which Travelers preliminarily concluded that the Policies did not cover any claims asserted by WellStar against Plaintiffs, was that the Services Exclusion excluded claims based on "bodily injury" arising out of WellStar and Serdula's provision of medical treatment or the furnishing or dispensing of drugs. (Id.).

On December 20, 2010, Travelers sent a second letter (the "December 20th Letter") to Plaintiffs reiterating that the Services Exclusion excluded coverage of any claim that was based on "Serdula . . . providing anesthesiology services in the course of rendering a medical, surgical, health, or therapeutic service or treatment to each of the [WellStar Plaintiffs] – specifically involving the furnishing of drugs to them – when he committed assaults on them of various kinds." (Ex. 16 to Pls.' Mot. for Summ. J.).  Travelers again requested additional information about the potential claims, stating again that its coverage determination was preliminary and based only on the information that Travelers had been provided.  (Id.).[5]

_____

[5] In both the December 17th and 20th Letters, Travelers invited Plaintiffs to submit any additional information they would like to have considered as part of Travelers' preliminary coverage determination.  (Exs. 15 and 16 to Pls.' Mot. for Summ. J.). Plaintiffs did not provide additional information to Travelers about the claims after the December 17th and 20th Letters.  Before and after the December 17th and 20th Letters, Plaintiffs failed to disclose a number of pieces of information to Travelers that were relevant to the WellStar Plaintiffs' claims, to include the details of correspondence with the WellStar Plaintiffs' counsel, the existence of the December 2010 tolling agreements with the WellStar Plaintiffs, a list of potential

On December 23, 2010, WellStar wrote Plaintiffs that it was seeking indemnification from TCA under the terms of the PSA for the amounts WellStar was required to pay to settle the claims asserted by the WellStar Plaintiffs. (Ex. 17 to Pls.' Mot. for Summ. J.).

On March 25, 2011, Plaintiffs agreed to indemnify WellStar for the full amount required to be paid to settle the claims asserted by the WellStar Plaintiffs (the "WellStar Settlement"). (Ex. 18 to Pls.' Mot. for Summ. J.). MMNC paid Plaintiffs' attorneys' fees and contributed $500,000 to the WellStar Settlement under the sexual misconduct provision of the MMNC Policy. (Dep. of R. Page Powell, Jr. at 300-09, 312, 314).

F.    Procedural History

On October 14, 2011, Plaintiffs filed this action in the Superior Court of Gwinnett County. On November 18, 2011, Travelers removed the action to this Court on the basis of diversity jurisdiction. On July 27, 2012, Travelers and

---

claimants created by Plaintiffs in anticipation of litigation, a February 2010 report prepared by Plaintiffs' investigator regarding Serdula's background and the criminal charges against him, a February 2010 legal analysis prepared by Plaintiffs' counsel regarding Plaintiffs' liability for claims based on Serdula's sexual misconduct, a January 2011 legal analysis of verdicts and settlements for claims related to Serdula's sexual misconduct, and the December 2010 written demand for indemnification by WellStar. (Dep. of R. Page Powell, Jr. at 228-300, 309-14). After the December 20th Letter, Plaintiffs next contact with Travelers was when they initiated this action.

Plaintiffs filed their Cross-Motions for Summary Judgment [31, 34].  These

motions are now before the Court.

## II.   DISCUSSION

### A.   Legal Standard on a Motion for Summary Judgment

A court "shall grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(a).  Parties "asserting that a fact cannot be or is

genuinely disputed must support that assertion by . . . citing to particular parts of

materials in the record, including depositions, documents, electronically stored

information, affidavits or declarations, stipulations (including those made for

purposes of the motion only), admissions, interrogatory answers, or other

materials."  Fed. R. Civ. P. 56(c)(1).

The party seeking summary judgment bears the burden of demonstrating the

absence of a genuine dispute as to any material fact.  Herzog v. Castle Rock

Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999).  Once the moving party has met this

burden, the non-movant must demonstrate that summary judgment is inappropriate

by designating specific facts showing a genuine issue for trial.  Graham v. State

Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999).  Non-moving parties

"need not present evidence in a form necessary for admission at trial; however,

[they] may not merely rest on [their] pleadings." Id. "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

The Court must view all evidence in the light most favorable to the party opposing the motion and must draw all inferences in favor of the non-movant, but only "'*to the extent supportable by the record*.'" Garczynski v. Bradshaw, 573 F.3d 1158, 1165 (11th Cir. 2009) (quoting Scott v. Harris, 550 U.S. 372, 381 n.8 (2007) (emphasis in original)). "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ." Graham, 193 F.3d at 1282. "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Herzog, 193 F.3d at 1246. But, this requirement "extends only to 'genuine' disputes over material facts," meaning "more than 'some metaphysical doubt as to the material facts.'" Garczynski, 573 F.3d at 1165 (quoting Scott, 550 U.S. at 380). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial,'" and summary judgment for the moving party is proper. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

B.     Analysis

To prevail on a coverage claim, an insured must carry its burden of proving that it suffered a loss covered by the insurance policy.  See Chix v. Ga. Farm Bureau Ins. Co., 258 S.E.2d 208, 209 (Ga. Ct. App. 1979); see also Calabro v. Liberty Mut. Fire Ins. Co., 557 S.E.2d 427, 429 (Ga. Ct. App. 2001) ("To establish a *prima facie* case on a claim under a policy of insurance the insured must show the occurrence was within the risk insured against.") (internal quotations omitted).  Georgia courts "will not strain to extend coverage where none was contracted or intended."  Garland, Samuel & Loeb, P.C. v. Am. Safety Cas. Ins. Co., 651 S.E.2d 177, 179 (Ga. Ct. App. 2007).

The Policies provide coverage for those amounts that "the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which [the Policies] apply."  (Exs. 89 and 90 to Defs.' Mot. for Summ. J.).  The "bodily injury" covered must be caused by an "occurrence," which is defined as an "accident."  (Exs. 6 and 10 to Defs.' Mot. for Summ. J.).

Travelers contends that the bodily injuries caused by Serdula's sexual assaults of patients are not an "occurrence" covered by the Policies.[6]  Travelers

---

[6] Plaintiffs argue that Travelers' reliance on the Services Exclusion to support its preliminary determination that there was no coverage for the claims in the WellStar Action constitutes a waiver of Travelers' right to assert other coverage

also contends that Plaintiffs were not "legally obligated" to indemnify WellStar

under the PSA because the bodily injuries caused by Serdula's sexual misconduct

are not covered occurrences and the PSA does not contain a provision requiring

Plaintiffs to indemnify WellStar for claims alleged to be the result of WellStar's

negligence.

### 1.    *Georgia principles of insurance contract interpretation*

Georgia law governs the interpretation of the Policies.  See, e.g., Boardman

Petroleum, Inc. v. Fed. Mut. Ins. Co., 135 F.3d 750, 752 (11th Cir. 1998);

Bituminous Cas. Corp. v. Advanced Adhesive Tech., Inc., 73 F.3d 335, 337 (11th

Cir. 1996).  In Georgia, "[t]he construction of a contract is a question of law for the

---

defenses in this action.  (Pls.' Br. in Supp. of Mot. for Summ. J. at 14).  Plaintiffs
rely on Hoover v. Maxum Indemnity Co., 730 S.E.2d 413 (Ga. 2012), to support its
waiver argument.  Their reliance is misplaced.  In Hoover, the Supreme Court of
Georgia addressed the duty of an insurer to defend claims brought against its
insured.  Here, unlike in Hoover, no claims were ever brought against Plaintiffs
involving Travelers' duty to defend and no suit against Plaintiffs was pending
when coverage was requested for claims brought against WellStar for Serdula's
sexual assaults.  In the case before the Court, accurate and complete information
was not conveyed by Plaintiffs to Travelers, and Travelers did not formally deny
coverage of any claims brought against Plaintiffs.  See, e.g., S. Guar. Ins. Co. v.
Dowse, 605 S.E.2d 27, 28-29 (Ga. 2004) (an insurer is not estopped from arguing
claims brought against insured are not covered by policies after it refuses to defend
those claims).  Travelers notified Plaintiffs that its preliminary determinations were
based on the information provided to them by Plaintiffs and directed Plaintiffs to
submit additional information to Travelers to facilitate its ability to determine if
there was coverage of any claims asserted.  The Court finds Travelers did not
waive any defenses to this action.

court."  O.C.G.A. § 13-2-1; Giddens v. Equitable Life Assurance Soc'y of the U.S., 445 F.3d 1286, 1297 (11th Cir. 2006) ("[T]he interpretation of an insurance policy, including the determination and resolution of ambiguities, is a question of law for the court to decide.").

Courts interpret the unambiguous terms of an insurance policy according to the plain meaning of the terms.  See Grain Dealers Mut. Ins. Co. v. Pat's Rentals, Inc., 505 S.E.2d 729, 730 (Ga. 1998).  A court must first determine whether the contractual language is clear and unambiguous.  Id. (quoting RLI Ins. Co. v. Highlands on Ponce, LLC, 635 S.E.2d 168, 171 (Ga. Ct. App. 2006)).  "[N]o ambiguity exists where, examining the contract as a whole and affording the words used therein their plain and ordinary meaning, the contract is capable of only one reasonable interpretation."  Gen. Steel, Inc. v. Delta Bldg. Sys., Inc., 676 S.E.2d 451, 453-54 (Ga. Ct. App. 2009) (quoting Capital Color Printing v. Ahern, 661 S.E.2d 578, 583 (Ga. Ct. App. 2008)).  "Ambiguity exists where the words used in the contract leave the intent of the parties in question," that is, the parties' intent "is uncertain, unclear or is open to various interpretations."  Id. at 453 (quoting Ahern, 661 S.E.2d at 583).

If the language of the contract is unambiguous, "the court simply enforces the contract according to the terms, and looks to the contract alone for the

meaning." Am. Empire Surplus Lines Ins. Co. v. Hathaway Development Co., Inc., 707 S.E.2d 369, 371 (Ga. 2011) (quoting RLI Ins. Co., 635 S.E.2d at 171). "Unambiguous language must be afforded its literal meaning and plain ordinary words given their usual significance." Perkins v. M&M Office Holdings, LLC, 695 S.E.2d 82, 84 (Ga. Ct. App. 2010).

  2. *Interpretation of the Policies' coverage limitations for "bodily injury" as a result of an "occurrence"*

  The Policies provide coverage for "bodily injury" claims only if the bodily injury is the result of an "occurrence," which is further defined as an "accident." Finding the term unambiguous and construing the language based on its "plain, ordinary, and popular sense," Nesbitt v. Wilde, 703 S.E.2d 389, 391 (Ga. Ct. App. 2010), the Court finds that the term "occurrence" as used in the Policies does not include intentional sexual assaults upon sedated victims committed by Plaintiffs or their contractors.[7] This interpretation also is supported by Georgia law.

  "Accident," as defined under Georgia law, means "an event which takes place without one's foresight or expectation or design." O.C.G.A. § 1-3-3(2).

---

[7] The Court notes that Plaintiffs' interpretation of the Policies as providing coverage for intentional sexual assaults is further discredited by their obtaining insurance for acts of sexual misconduct through the professional liability insurance policy issued by MMNC. That Plaintiffs contracted to cover incidents of sexual misconduct by its employees and contractors through their professional liability insurance carrier, but did not do so with the Travelers' Policies supports that the Travelers' Policies do not cover intentional sexual assaults as occurrences.

Georgia courts in interpreting insurance contracts, consistently have construed the term "accident" to mean "an unintended happening rather than one occurring through intention or design." Owners Ins. Co. v. James, 295 F. Supp. 2d 1354, 1363 (N.D. Ga. 2003) (citing Allstate Ins. Co. v. Grayes, 454 S.E.2d 616, 618 (Ga. Ct. App. 1995); Thrift-Mart, Inc. v. Commercial Union Assurance Cos., 268 S.E.2d 397, 400 (Ga. Ct. App. 1980)).

Other Georgia courts have construed insurance policies providing coverage for "accidents." In doing so, the courts consistently have held that an "accident" does not include "intentional" acts. See Ga. Farm Bureau Mut. Ins. Co. v. Meriwether, 312 S.E.2d 823, 824 (Ga. Ct. App. 1983) (holding that injury caused by the intentional blocking of a roadway was not the result of an accident and thus was not covered by the insurance policy at issuee); Clean Air Am., Inc. v. Hartford Cas. Ins. Co., No. 1:06-cv-1181-GET, 2007 WL 1247151, at *2-*3 (N.D. Ga. Apr. 30, 2007) (citing Owners, 295 F. Supp. 2d at 1364). In Mindis Metals, Inc. v. Transportation Insurance Company, 209 F.3d 1296 (11th Cir. 2000), the Eleventh Circuit also held that, under Georgia law, damages caused by intentional conduct are not an "accident." 209 F.3d at 1299-1300 ("A fair reading of Meriwether leads to the inevitable conclusion that an 'accident' does not include damage to persons or property when that damage is intentionally inflicted . . . .").

Courts have specifically found that intentional acts of a sexual nature are not "occurrences" for the purposes of coverage under general liability policies. See SCI Liquidating Corp. v. Hartford Fire Ins. Co., 181 F.3d 1210, 1215-17 (11th Cir. 1999); O'Dell v. St. Paul Fire & Marine Ins. Co., 478 S.E.2d 418, 420 (Ga. Ct. App. 1996); Presidential Hotel and Canal Ins. Co., 373 S.E.2d 671, 672-73 (Ga. Ct. App. 1988). Negligence claims arising from intentional acts that are otherwise excluded from coverage under a policy also are not covered where there is no coverage for the underlying intentional conduct. See SCI, 181 F.3d at 1216-17; Jefferson Ins. Co. of New York v. Dunn, 496 S.E.2d 696, 698-99 (Ga. 1998); Continental Cas. Co. v. H.S.I. Fin. Servs., Inc., 466 S.E.2d 4, 6-7, 7 n.4 (Ga. 1996).

The Court finds that the Policies do not provide coverage for the claims arising from Serdula's sexual assaults because his intentional acts are not "occurrences" covered by the Policies.

3. *Travelers' obligation to pay claims based on WellStar's negligence pursuant to the indemnification provision of the PSA*

The PSA provides that TCA will indemnify WellStar for claims based on the conduct of TCA's employees and contractors. The Policies, however, provide that Travelers is obligated only to pay amounts "that [Plaintiffs] become[] legally obligated to pay as damages because of 'bodily injury'" for which the Policies apply. (Exs. 89 and 90 to Defs.' Mot. for Summ. J.). As discussed above, the

Policies only provide coverage for injury resulting from "accidents," and they do not cover intentional conduct, such as sexual assaults.  (Id.).

The WellStar Complaint claims that were settled by WellStar were claims for damages based on WellStar's conduct and negligence.  The settled claims were not brought against, nor based on conduct engaged in by, Plaintiffs.  The Court has found that Serdula's sexual assaults do not qualify as occurrences that caused bodily injury.  The Court further finds—to the extent the indemnification provision to the PSA is an "insured contract" under the Policies and TCA is a named insured[8]—that the Policies do not obligate Travelers to pay claims for injury and negligence which are based on Serdula's sexual misconduct.  The indemnification provision of the PSA does not legally obligate Plaintiffs to contribute to the settlement of the WellStar Plaintiffs' claims based on WellStar's own negligence and acts and for this additional reason the claims are not covered under the Policies.  See Emergency Professionals of Atlanta, P.C. v. Watson, 654 S.E.2d 434, 436-38 (Ga. Ct. App. 2007) (citing Park Pride Atlanta v. City of Atlanta, 541 S.E.2d 687 (Ga. Ct. App. 2000); S. Railway Co. v. Union Camp Corp., 353 S.E.2d 519 (Ga. Ct. App. 1987)) ("[U]nless there is explicit language to the contrary, an

---

[8] Travelers also disputes coverage on the ground that TCA was not a named insured under the Policies during some of the occasions when Serdula sexually assaulted his victims.

indemnity agreement cannot be interpreted to hold an indemnitee harmless from its own negligence.").

It is undisputed that the injury and damages inflicted by Serdula were the result of intentional conduct. The bodily injuries incurred by Serdula's victims thus were not the result of an "occurrence" as defined under the Policies and Travelers is not liable to indemnify Plaintiffs for their voluntary contributions to settlements of claims brought against WellStar based on Serdula's intentional sexual assaults. Travelers is entitled to summary judgment on Plaintiffs' breach of contract and bad faith denial of coverage claims.[9]

---

[9] Even if the Policies' definition of "occurrence" encompassed intentional torts or Travelers' defenses were limited to the Services Exclusion—which the Court finds is not the case—summary judgment would be appropriate because the Services Exclusion excludes coverage for claims that arise from the administration of anesthesia services. See, e.g., Dunn, 496 S.E.2d at 699 (claim against insured "arose out of" assault and battery by insured's employee if, "'but for' an assault and battery *caused by* the employee, there could be no claim against [the insured]"); Continental Cas. Co., 466 S.E.2d at 6 ("[I]t is clear that [the] claim . . . 'arose out of' [the] actions, because but for [the] actions, there could be no claim against [the insureds].''); Cotton States Mut. Ins. Co. v. Crosby, 260 S.E.2d 860, 861-62 (Ga. 1979) (negligence action against insured "ar[ose] from" third party's attack and rape); Se. Fidelity Ins. Co. v. Stevens, 236 S.E.2d 550, 551 (Ga. 1977) ("'[A]rising out of' does not mean proximate cause in the strict legal sense, nor require a finding that the injury was directly and proximately caused . . . . [A]lmost any causal connection or relationship will do."); Manning v. USF&G Ins. Co., 589 S.E.2d 687, 688-91 (Ga. Ct. App. 2003) (reviewing Georgia precedent); Dynamic Cleaning Serv., Inc. v. First Fin. Ins. Co., 430 S.E.2d 33, 34-35 (Ga. Ct. App. 1993) (negligence claim against insured "based on" assault and battery); see also Houg v. State Farm Fire & Cas. Co., 509 N.W.2d 590, 592-93 (Minn. Ct. App.

III.   **CONCLUSION**

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Travelers' Motion for Summary

Judgment [31] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Summary

Judgment [34] is **DENIED**.

---

1993) (coverage denied for bodily injury claims caused by sexual abuse on grounds that arise from providing of pastoral counseling services).  The Court notes further that coverage is not available under the Policies because Plaintiffs breached their duty to cooperate by failing to comply with the notice provisions of the Policies and failing to forward information to Travelers that was relevant to the claims for which they sought coverage.  See Owners Ins. Co. v. Gordon, 315 F. App'x 146, 148 (11th Cir. 2008) (citing Richmond v. Ga. Farm Bureau Mut. Ins. Co., 231 S.E.2d 245, 250 (Ga. Ct. App. 1976)); Lankford v. State Farm Mut. Auto. Ins. Co., 703 S.E.2d 436, 438-39 (Ga. Ct. App. 2010); (Dep. of R. Page Powell, Jr. at 228-300, 309-14).  The Court also notes that Plaintiffs breached their duty to cooperate in the settlement of claims and the voluntary payment conditions in the Policies by unreasonably and unjustifiably failing to provide information to Travelers and voluntarily contributing to the settlement of the WellStar Plaintiffs claims without Travelers' consent.  See Hathaway Dev. Co., Inc. v. Illinois Union Ins. Co., 274 F. App'x 787, 791 (11th Cir. 2008); Trinity Outdoor, LLC v. Cent. Mut. Ins. Co., 679 S.E.2d 10, 12-13 (Ga. 2009); Halcome v. Cincinnati Ins. Co., 334 S.E.2d 155, 156-57 (Ga. 1985); Allstate Ins. Co. v. Hamler, 545 S.E.2d 12, 14-15 (Ga. Ct. App. 2001); KHD Deutz of Am. Corp. v. Utica Mut. Ins. Co., Inc., 469 S.E.2d 336, 338-40 (Ga. Ct. App. 1996); (Dep. of R. Page Powell, Jr. at 228-300, 309-14).

**SO ORDERED** this 21st day of February, 2013.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE